UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

LAUREN EIRK ENTERPRISES, LLC                                                              PLAINTIFF

v.                                                                    CIVIL ACTION NO. 3:12-CV-127

SUZANNE BRYANT-CUNHA                                                                    DEFENDANT

**MEMORANDUM OPINION**

This case concerns a dispute over an Internet domain name registered and used by defendant Suzanne Bryant-Cunha ("Bryant-Cunha"). According to the allegations in the first amended complaint, since at least 2005, plaintiff Lauren Eirk Enterprises, LLC ("Eirk") has operated a yoga instruction business under the name YOGA I.S.[1] The business involved a yoga school, weekend workshops, conventions, and intensive trainings. On May 6, 2008, Eirk registered a trademark for "YOGA I.S." for "Teaching in the field of yoga."

In 2010, Bryant-Cunha registered the Internet domain name "www.yogais.com." Bryant-Cunha then operated a website at that domain name to sell and promote an "educational" documentary film entitled "YOGA IS." On Bryant-Cunha's website, the term YOGA IS is capitalized and followed by a ™ designation. Around August 2011, Eirk sought to establish a website relating to her yoga instruction business, at which point she became aware of Bryant-Cunha's registration and use of the www.yogais.com domain name. Eirk alleges that "[c]onsumers are likely to be confused that [Bryant-Cunha], doing business under the domain name

---

[1] In their pleadings and motion papers, the parties refer to the plaintiff not as a business entity, but as an individual. The court will follow that convention here.

www.yogais.com, generally under the term YOGA IS, is affiliated with, sponsored by or approved by [Eirk]." Indeed, Eirk alleges, some of her own customers had been confused. After becoming aware of Bryant-Cunha's website, Eirk sent letters and emails to Bryant-Cunha requesting that she cancel the registration of the domain name or transfer the registration to Eirk.

Eirk filed a complaint against Bryant-Cunha with claims for federal trademark infringement and federal unfair competition. Thereafter, Bryant-Cunha moved to dismiss for lack of personal jurisdiction (DN 7). Eirk filed a response to the motion. Eirk also filed a first amended complaint. Eirk added a factual allegation that it had recently become apparent that Bryant-Cunha's "objective was to require [Eirk] to purchase the domain name from [Bryant-Cunha], including an initial demand for $45,000." Eirk attached to the first amended complaint copies of emails exchanged by her and Bryant-Cunha after the initial complaint had been filed. Those emails concerned possible resolution of the case outside of court. During that email discussion, Bryant-Cunha stated that she would transfer the domain name to Eirk for $45,000. In addition to the added factual allegations in the first amended complaint, Eirk added a claim for violation of the Anticybersquatting Consumer Protection Act ("ACPA"). After Eirk filed the first amended complaint, Bryant-Cunha filed reply papers in support of the motion to dismiss the original complaint, as well as a motion to dismiss the first amended complaint for lack of personal jurisdiction (DN 13). Eirk moved to strike a portion of Bryant-Cunha's reply (DN 14). The parties then fully briefed the latter motions; thus, both motions to dismiss and the motion to strike are ripe.

Initially, the court will deny Eirk's motion to strike. In Bryant-Cunha's reply in support of her motion to dismiss, Bryant-Cunha suggests in a lengthy footnote that Eirk "engaged in fraudulent conduct in obtaining the federal trademark registration that is the subject of the present lawsuit – a

registration that is void on its face." Bryant-Cunha states that Eirk's supposedly fraudulent conduct will be the subject of a motion to dismiss if the case is not dismissed for lack of personal jurisdiction, as well as possibly a claim by Bryant-Cunha against Eirk. Eirk contends that Bryant-Cunha's allegation that Eirk committed fraud before the United States Patent and Trademark Office should be struck because it is a "scandalous assertion" and a "blatant misstatement of both law and fact." However, inasmuch as the validity of the trademark could be a genuine issue in this case, the court sees no way to characterize Bryant-Cunha's argument on that point as so scandalous as to require being struck from her reply papers. Nevertheless, it is also true that Bryant-Cunha's argument that Eirk engaged in fraudulent conduct to obtain the trademark registration has nothing to do with whether this court may exercise personal jurisdiction over Bryant-Cunha. Accordingly, while the court will decline to strike the footnote, the footnote nevertheless plays no part in the court's decision with respect to Bryant-Cunha's motions to dismiss for lack of personal jurisdiction. We now turn to those motions.

The plaintiff bears the burden of establishing personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). When a district court resolves a motion to dismiss for lack of personal jurisdiction by relying on written submissions and affidavits rather than holding an evidentiary hearing, the plaintiff is only required to make a prima facie showing that personal jurisdiction exists to defeat the motion. *Id.*; *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). To meet that burden, the plaintiff must "establish[] with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen*, 282 F.3d at 887 (quoting *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 2987)). Without a hearing, the court must construe the pleadings and

affidavits in the light most favorable to the plaintiff, *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996), and cannot "consider facts proffered by the defendant that conflict with those offered by the plaintiff." *Neogen*, 282 F.3d at 887.

To determine whether personal jurisdiction exists, a federal court applies the law of the forum in which it sits, subject to the requirements of constitutional due process. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997). While courts previously held that Kentucky's long-arm statute, KRS § 454.210, extends to the outer reaches of due process, *see, e.g.*, *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 730 F. Supp. 2d 683, 689 (W.D.Ky. 2010), the Kentucky Supreme Court has since clarified that the statute is not, *per se*, coextensive with the limits of federal due process. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011). Instead, the Kentucky Supreme Court held, a defendant's conduct and activities must fall within one of the nine specific provisions in the statute before a Kentucky court may exercise personal jurisdiction over a defendant. *Id.* When assessing whether specific personal jurisdiction exists, a court must examine each claim independently to determine whether the cause of action arises from the defendant's contacts with Kentucky. *Preferred RX, Inc. v. Am. Prescription Plan, Inc.*, 46 F.3d 535, 550 (6th Cir. 1995).

Eirk contends that the provision of the Kentucky long-arm statute that applies here is KRS § 454.210(2)(a)(4), which states:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
>
> . . .
>
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or

> consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth[.]

Violations of federal trademark law constitute a tort for purposes of the long-arm statute. *See Bird v. Parsons*, 289 F.3d 865, 876 (6th Cir. 2002) (noting that under the Ohio long-arm statute, a claim under federal trademark law is analogous to a tort case).

Thus, we turn to whether Bryant-Cunha "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in" Kentucky. Eirk contends that the following facts establish that Bryant-Cunha either engaged in a persistent course of conduct in Kentucky or regularly solicited business in Kentucky. On Bryant-Cunha's website for the documentary film, she had a page that states:

> HOST A SCREENING
>
> I am so happy that people from all over the world are requesting screenings of YOGA IS! . . .
>
> I would love to come host a screening at your studio or city OR you can have one at your school or local theater. In order to have a screening at your yoga studio you must pay a licensing fee $250 [sic].
>
> . . .
>
> I am also doing screenings throughout the US and internationally that combine a workshop or a Q and A lecture or class. Please contact me if your [sic] would like to host this at your studio.

Another page of the website allowed for persons to purchase presale DVDs of the documentary.

However, the court concludes that these webpages that marketed Bryant-Cunha's products and services to any person that wanted them, wherever that person was, without more, are insufficient to find that Bryant-Cunha "regularly does or solicits business . . . in this

Commonwealth." The court concludes that the statute requires that the defendant's actions have a stronger connection with Kentucky than simply the possibility that at some point a Kentucky resident would find Bryant-Cunha's website and request Bryant-Cunha's services or products.

That stronger connection does not exist here. Bryant-Cunha has stated that she has never performed services in Kentucky or sold products in Kentucky, has never directed her sales or marketing efforts specifically toward Kentucky, and has never been to Kentucky. Eirk puts forth no allegations or evidence to the contrary.

Moreover, exercising jurisdiction over Bryant-Cunha based on the website would be inconsistent with due process. The Sixth Circuit employs a three-part test for determining whether personal jurisdiction is proper under the Constitution:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). The first requirement, purposeful availment, is met where a defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957)). "Th[e] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id.* (internal quotations omitted).

Bryant-Cunha's connection with Kentucky – to the extent it can be called a connection – consists only of her website. The website is not directed toward Kentucky itself, so much as it advertises that Bryant-Cunha will provide products and services anywhere in the United States, or, for that matter, the world. As noted above, there is no indication that Bryant-Cunha had taken orders from Kentucky residents or performed services in Kentucky.

The leading case regarding personal jurisdiction based upon a defendant's operation of a website is *Zippo Mfg. Co. v. Zipp Dot Com, Inc.*, 952 F. Supp. 1119 (W.D.Pa. 1997). That case established a "sliding scale" test for assessing whether a defendant's web activities should subject him or her to personal jurisdiction in a particular forum. *Zippo*, 952 F. Supp. at 1124. The court in *Zippo* explained the sliding scale thusly:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by the interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* In *Zippo*, the court found the defendant subject to personal jurisdiction in Pennsylvania where the defendant "repeatedly and consciously chose to process Pennsylvania residents' applications and to assign them passwords." *Id.* at 1126. The court noted that the defendant "knew that the result of these contracts would be the transmission of electronic messages into Pennsylvania" and "[t]he transmission of th[o]se files was entirely within its control." *Id.* The court also noted that if the defendant "had not wanted to be amenable to jurisdiction in Pennsylvania, the solution would have

been simple – it could have chosen not to sell its services to Pennsylvania residents." *Id.* at 1126-1127.

The Sixth Circuit confronted the issue of personal jurisdiction based on a website in *Neogen*, 282 F.3d 883. In *Neogen*, the defendant was engaged in the business of performing diagnostic testing of blood samples from infants. 282 F.3d at 886. It had an internationally available website that provided information about the company's services and allowed customers to print blood-collection forms to mail along with blood samples to the defendant's place of business in Pittsburgh, Pennsylvania. *Id.* at 886-887. In 1999, the defendant performed approximately 215,000 total tests; 14 of them were done by mail order from Michigan customers. *Id.* The plaintiff, a Michigan corporation, filed a lawsuit against the defendant in the Western District of Michigan. *Id.* at 886.

The Sixth Circuit reversed the district court's order dismissing the case for lack of personal jurisdiction. It began by noting that the simple maintenance of a website, in and of itself, is insufficient to constitute the purposeful availment of the privilege of acting in Michigan. *Neogen*, 282 F.3d at 890. Turning to the specifics of the defendant's website in that case, the Sixth Circuit noted that it primarily consisted of passively posted information, such as advertisements and basic contact information. *Id.* However, the Sixth Circuit noted, several aspects of the website would lend support to a finding of purposeful availment. *Id.* For instance, the defendant provided passwords to Michigan residents that purchased the defendant's services so that the customers could access test results on the web; doing so was an "interactive usage showing that [the defendant] ha[d] intentionally reached out to Michigan customers and enabled them to use [the defendant's] services from Michigan." *Id.* at 890-891. The Sixth Circuit also pointed out that the defendant held itself out through the website as welcoming Michigan business by stating that it did testing for "any parent

in any state"; it also posted on the website a chart with a geographical breakdown of data about the results of certain testing that "expressly include[d] Michigan." *Id.* at 891.

The Sixth Circuit found that the question of whether the website alone would be sufficient to sustain personal jurisdiction was a "close question." *Neogen*, 282 F.3d at 891. However, the Sixth Circuit did not need to decide that question because the defendant not only operated the website, but had actually "welcomed the[] individual business" of customers from Michigan "on a regular basis," namely, the 14 yearly contracts for testing that came from Michigan customers. *Id.* The Sixth Circuit found that the purposeful availment requirement was met when the defendant's website and interactions with Michigan customers were considered in tandem. *Id.* at 893. That the defendant accepted payment from, sent passwords to, and mailed test results to customers with Michigan addresses established that the defendant "chose to contract with customers from Michigan" and "reach[ed] out to Michigan to perform its services there." *Id.* The Sixth Circuit continued to find the other two requirements for personal jurisdiction – that the cause of action arise from the defendant's activities in the forum state and that the exercise of personal jurisdiction would be reasonable – were met. *Id.* at 892.

In a subsequent unpublished case, this court considered whether a defendant's maintenance of a website capable of completing sales transactions with Kentucky residents could allow for the exercise of personal jurisdiction over the defendant in Kentucky. *QSR Automations, Inc. v. KRS Corp. LLC*, 2010 WL 1416700 (W.D.Ky. Mar. 31, 2010). This court, relying on *Neogen*, found that personal jurisdiction was improper:

> The website in issue here apparently has the capability of completing sales transactions for KRS products, although KRS urges that such transactions are rare. The pertinent point, however, is that no sales have ever been made to a Kentucky

purchaser. Thus while the interactive capability exists, there have been no such Internet contacts with Kentucky.

*Id.* at *3.

The same principle applies in this case. Bryant-Cunha had an interactive website that was capable of selling her services and products to Kentucky residents. But nothing about the website was directed toward Kentucky residents as opposed to those residents of anywhere else in the world. Nor has Bryant-Cunha ever made any sales of services or products to Kentucky residents. Accordingly, Bryant-Cunha cannot be said to have purposefully availed herself of Kentucky laws.

Eirk contends that the "effects test" set out in *Calder v. Jones*, 465 U.S. 783, 788-790 (1984) allows for the exercise of personal jurisdiction over Bryant-Cunha. In *Calder*, actress Shirley Jones sued two Florida newsmen who worked for a Florida-based newspaper, the National Enquirer, for libel. *Calder*, 465 U.S. at 784-786. Jones lived and worked in California, where the National Enquirer had its highest level of distribution. *Id.* at 785, 788. She brought her suit in a California court. *Id.* at 784. Although the allegedly libelous article was written and edited in Florida, the Supreme Court found that the California court could exercise personal jurisdiction over the newsmen. *Id.* at 785-786, 791. In doing so, the Supreme Court stated that California was the "focal point both of the story and of the harm suffered." *Id.* at 789. Noting that the mere fact that the newsmen could "foresee that the article [would] be circulated and have an effect in California [was] not sufficient for an assertion of jurisdiction," the Court stated that in that case, the newsmen's "intentional, and allegedly tortious, actions were expressly aimed at California." *Id.* at 789 (internal quotation marks omitted).

Thus, to fulfill the *Calder* "effects test," an out-of-state defendant must have purposefully directed intentional tortious conduct toward the forum state; it is not enough that a defendant could

have foreseen that an injury would occur in the forum state. Here, there is no indication whatsoever that Bryant-Cunha's actions were "expressly aimed" at Kentucky. She created a website that was generally accessible to anybody in the world for the purpose of advertising her film and related services and products, not to cause an effect in Kentucky. Indeed, there is no indication that, prior to Eirk sending Bryant-Cunha a cease and desist letter concerning the alleged trademark infringement, Bryant-Cunha was even aware that Eirk, a Kentucky resident, had registered a trademark for "YOGA I.S." Thus, Bryant-Cunha cannot be said to have "expressly aimed" her conduct at Kentucky. *Calder*, 465 U.S. at 789.

Eirk suggests that the "effects test" is met because, after Eirk found out about Bryant-Cunha's website, she placed Bryant-Cunha on notice of her belief that Bryant-Cunha was infringing her trademark and causing harm in Kentucky. However, the court rejects the notion that Bryant-Cunha developed minimum contacts with Kentucky simply because she continued to operate her website after receiving Eirk's cease and desist letters or emails. *Calder* requires that the intentional actions be "expressly aimed" at the forum state. 465 U.S. at 789. When Bryant-Cunha began to operate her website, she had a legitimate reason – promotion of her film – and was unaware of Eirk's website. That Bryant-Cunha continued to operate the website even after receiving notice from Eirk regarding Eirk's registered trademark does not change the fact that Bryant-Cunha did not "expressly aim[]" her conduct at Kentucky, but rather simply desired to continue to promote her film through her website. Indeed, the cease and desist letters simply placed Bryant-Cunha on notice of Eirk's belief that she was being harmed in Kentucky. *Calder* makes clear that foreseeability of effects in the forum state is insufficient. 465 U.S. at 789.

Finally, Eirk suggests that Bryant-Cunha's offer to sell the domain name to Eirk for $45,000 supports the conclusion that Bryant-Cunha has purposefully availed herself of the laws of Kentucky. The argument is unavailing. Bryant-Cunha's offer was made during an exchange of emails between the two parties *after* Eirk filed the initial complaint.[2] The court is not aware of any cases in which personal jurisdiction was lacking at the inception of the suit but was established retrospectively by reference to facts that occurred after the filing and service of the initial complaint. Moreover, a review of the emails attached by Eirk to the first amended complaint makes clear that Bryant-Cunha's offer to sell the domain name to Eirk for $45,000 was made during settlement negotiations of the claims brought in Eirk's initial complaint. The court is unwilling to find that a defendant not otherwise subject to this court's jurisdiction renders personal jurisdiction over himself or herself proper simply by exploring alternative means of resolving the dispute other than litigating the case in this forum. *Cf. Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011) (holding that a defendant that moves for a stay to seek an alternative means of resolving a dispute besides litigation does not waive a personal jurisdiction defense).

In sum, Eirk's motion to strike will be denied. Additionally, the court finds that personal jurisdiction over Bryant-Cunha is lacking under the Kentucky long-arm statute and under the Due Process Clause. Accordingly, the court will grant Bryant-Cunha's motions to dismiss the complaint and amended complaint.

---

[2] The court notes that the fact that the statement was made after Eirk filed the initial complaint means that, insofar as any allegations in Eirk's first amended complaint rely on the statement, they are supplemental allegations rather than amendments. To serve a supplemental pleading, a party is required to seek leave of court, which Eirk did not do. However, because Bryant-Cunha has not filed a motion to strike the first amended complaint, the court will decline to address this matter. For the purposes of the motions to dismiss, it is enough for the court to note that the statement was made after Eirk filed the initial complaint.

- 13 -

A separate order will issue in accordance with this opinion.

January 15, 2013

**Charles R. Simpson III, Judge**
**United States District Court**

Case 3:12-cv-00127-CRS Document 19 Filed 01/15/13 Page 13 of 13 PageID #: 220